THOMAS E. BOYCE ET AL., TRUSTEES *v.* FRED J. SUMNER,
COLLECTOR OF TAXES.

Special Term at Rutland, November, 1923.

Present:   WATSON, C. J., POWERS, TAYLOR, SLACK, and BUTLER, JJ.

Opinion filed May 7, 1924.

*Wills—Rules for Construction—Charities—Requisites Necessary
   to Constitute Public Charity—Nature and Purpose of Gift
   Controlling in Determining Whether Gift Is Public Charity
   —Trust for Aged Women as A Public Charity—Taxation—
   "Taxes"—"Charitable Use"—Void Assessment by Listers
   May Be Impeached—Statutory Provisions Relating to Appeal Inapplicable to Property Outside Listers' Jurisdiction—*

*Evidence—Admissibility of Decree of Distribution to Determine Taxability of Property Given by Will to Charitable Uses—Admissibility of Final Accounts to Show Date When Trust Began.*

1. A will and its codicils are to be construed together as constituting one instrument, and the intention of the testator, as gathered from the whole instrument, controls.

2. In construing a will, effect should be given to every clause, and proper force to every word.

3. Equity should so interpret a testamentary trust as to effectuate the testator's intention if possible.

4. To give a gift the character of a public charity there must appear to be some benefit to be conferred upon, or duty to be performed towards, either the public at large or some part thereof, or an indefinite class of persons.

5. In determining whether a gift is a public charity, the courts look, not at the motive of the donor in making it, but at the nature and purpose of it.

6. A provision in a will creating a trust for the purpose of founding a home for good Christian women, 60 years of age or over, residents of Vermont, and of American lineage for two generations is a public charity.

7. Such a grant was for charitable uses within the meaning of G. L. 684, subd. VI, and as such, was exempted from taxation thereby, notwithstanding the specific injunction of testator in the first codicil that "I want the taxes on all my property promptly paid," as, in the absence of anything showing a different intention on his part, the word "taxes" is to be understood in its ordinary sense as having reference to burdens imposed by legislative authority in the exercise of the taxing power.

8. The residuary estate given by the will of a testator in trust to be applied to the charitable uses and purposes of a designated charitable institution is a grant for charitable uses within the meaning of G. L. 684, subd. VI, and is not subject to taxation.

9. In an action by the trustees of a charitable trust created by a will, to recover taxes paid by them under protest, where one of the trustees had also been executor of the will, and the defendant's contention was that on the date when the assessment was made the property was still in the hands of such executors,

and so then subject to taxation, findings *held* to show a trans- fer of the trust property from the executor to the trustees prior to such date, hence that the trust estate was then exempt from taxation as property granted for charitable uses, the fact that on that. day no part thereof had been expended for the purpose of the trust being immaterial.

10. An assessment by listers of property not within their jurisdiction, being without warrant of law, is void and may be impeached by the person aggrieved thereby in any way and at any time.

11. The statutory proceedings by way of appeal relate to errors and mistakes of the listers in assessing taxable property, and not in assessing non-taxable property over which they have no jurisdiction.

12. In an action by the trustees of a charitable trust created by a will, to recover taxes paid under protest, where the trust funds were to be applied to the charitable uses and purposes of public charity created by the will of the husband of the testatrix, under G. L. 700 and G. L. 703, subd. VI, relating to the assessment of undivided real estate and undistributed personal property in an estate, the decree of distribution in each of such estates was admissible in determining the taxability of the property granted to such charitable use, on the assessment date.

13. In such an action, the final accounts in each of such estates was admissible in evidence for the purpose of establishing the date on which the trust began, against the exception that the evidence was immaterial.

ACTION OF CONTRACT to recover money paid for taxes under protest. Plea, the general issue. Trial by court in the Addison County municipal court, *Albert W. Dickens,* Judge. Judgment for the. plaintiffs. The defendant excepted. The opinion states the case. *Affirmed.*

*Stickney, Sargent & Skeels* for the defendant.

The action of the listers was judicial and final, and their judgment as to the amount of property, unappealed from, was conclusive. *Braley* v. *Barre,* 88 Vt. 251; *Waterman* v. *Davis,* 66 Vt. 83, 88; *Taylor* v. *Moore,* 63 Vt. 60, 68; *Weatherhead* v. *Guilford,* 62 Vt. 327, 330.

The town of Salisbury was not bound by a decree of the probate court, distributing an estate and thereby construing a will, because such town was not a party in that proceeding, and a judgment is binding only upon a party to a proceeding or one in privity with him. *Kimball* v. *New York Life Ins. Co.*, 94 Vt. 100, 103; *Corey* v. *Morrill*, 71 Vt. 51, 58; *Gerrish* v. *Bragg*, 55 Vt. 329, 336; *Knapp* v. *Marlboro,* 31 Vt. 674; *Atkinson* v. *Allen,* 12 Vt. 619, 624; *Nason* v. *Blaisdel*, 12 Vt. 165, 170, 171.

*Allen R. Sturtevant* for the plaintiffs.

The plaintiffs had the right to show that the listers of the town of Salisbury had no legitimate information or evidence tending to show that the plaintiff had any property in such town subject to taxation; also that the tax was illegal, and that information showing such illegality had been supplied the listers at time of assessment. *Taylor* v. *Moore*, 63 Vt. 67; *Weatherhead* v. *Guilford*, 12 Vt. 327; *Howes* v. *Bassett*, 56 Vt. 141; *Rowell* v. *Horton*, 58 Vt. 1; *Bullock* v. *Guilford*, 59 Vt. 516; *National Metal Edge Box Co.* v. *Readsboro*, 94 Vt. 409; *Babcock* v. *Granville*, 44 Vt. 225.

The decree of the probate court unappealed from, distributing an estate, settled the matters adjudicated therein. *Sparrow* v. *Walson et al.*, 87 Vt. 366; *Stone* v. *Peasley's Estate*, 28 Vt. 716; *Leavins* v. *Ewins et al.*, 67 Vt. 256.

A gift in trust in a will to establish a home for aged women of a certain class is a charitable trust, and its exemption from taxation under G. L. 684, subdivision VI, is not affected by the requirement of an admission fee, nor by one that all property of an applicant be transferred to the home. *St. Albans Hospital and Warner Home for Little Wanderers* v. *Town of Enosburg et al.*, 96 Vt. 389, 120 Atl. 97; *Gooch* v. *Association for Relief of Aged, Indigent Females,* 109 Mass. 558; *Matter of Will of Vassar, re Vassar Brothers Home for Aged Men,* 127 N. Y. 13, 14; *Commonwealth* v. *Parr's Executor*, 167 Ky. 46; *Bishop and Chapter of St. John, the Evangelist* v. *Treasurer of the City and County of Denver*, 37 Colo. 378.

In a charitable trust, residents of a certain section may be preferred or the bounty of the testator limited entirely to those residing in such region. 11 C. J. § 339, note 44 (a) ; *Richardson*

v. *Essex Inst.,* 208 Mass. 311, 94 N. E. 262; *Matter of Bogart,* 43 App. Div. 582, 60 N. Y. S. 496; *Matter of Will of Vassar, etc., supra; Burd Orphan Asylum* v. *Upper Darby School District,* 90 Pa. 21, 34; *Re Will of Mary S. Robinson,* 203 N. Y. 380, 96 N. E. 925, 37 L. R. A. (N. S.) 1024; *Paschal* v *Acklin,* 27 Tex. 173, 178.

WATSON, C. J.   This action is brought by the trustees of Harriet J. Smith Trust Estate to recover taxes paid by them under protest to the collector of taxes of the town of Salisbury, on September 29, 1922.   The case was brought to and the facts were found by the Addison County municipal court.   The taxes so paid, amounting to $121.03, were assessed by the listers of the town on a list of said trust estate for the year 1922, made up as hereinafter stated.   On the facts found judgment was rendered for the plaintiffs to recover the sum of the taxes paid and interest thereon, amounting to $125.87, and costs.   The case is here on defendant's exceptions.

Although some questions relating to evidence have been presented, the real bone of contention is as to the taxability of the property of the trust estate on April 1, 1922.   The testatrix died April 30, 1919, leaving a will including three codicils, the same being duly probated in the year 1919 and completed in 1920.

The second codicil contains the provision: "I do give and grant the residue and remainder of all my estate, both real and personal, wherever situate, to Thomas E. Boyce, of Middlebury, in the County of Addison and State of Vermont, and Morris A. Thomas, of said Salisbury, trustees, and to their successors in trust, to be applied to the charitable uses and purposes of the Columbus Smith Home created by the will of my late husband, under the direction of said trustees in co-operation with the trustees appointed under the will of my late husband."

In determining whether the residuary estate is, by the foregoing clause of the will of the testatrix, given for charitable uses within the meaning of subdivision VI of section 684 of the General Laws, it becomes necessary to inquire regarding the character of the uses and purposes of the Columbus Smith Home.

By the last codicil to the will of Columbus Smith, his original will was modified and changed "so that the estate therein given

to trustees shall be and the same is hereby given, devised and bequeathed to my trustees as last above named and defined, in trust for the purpose of founding a Home located on my home farm in Salisbury, for Good Christian Women, sixty years of age or over, residents of Vermont and of American lineage for two generations. Residents of Addison County, Vermont, to be preferred to residents of other parts of Vermont. * * * And I further will that no woman shall be admitted to said Home or to the benefits thereof except upon payment of an admission fee of two hundred dollars.''

[1-3]    In construing this will certain rules are applicable. One, the will and codicils are to be construed together as constituting one instrument, and the intention of the testator, as gathered from the whole instrument, is to control. *Thompson's Admr.* v. *Churchill's Estate,* 60 Vt. 371, 14 Atl. 699. Two, effect should be given to every clause, and proper force to every word. *Shepard's Heirs* v. *Shepard's Estate,* 60 Vt. 109, 14 Atl. 536. And three, equity should so interpret the testamentary trust as to effectuate the testator's intention if possible. *Wales' Admr.* v. *Bowdish's Exr.,* 61 Vt. 23, 17 Atl. 1000, 4 L. R. A. 819.

[4, 5]    Various definitions have been given of a charitable use or purpose, but perhaps none is better or more applicable to the circumstances of the instant case, than that given by the Supreme Judicial Court of Massachusetts in *Old South Society* v. *Crocker,* 119 Mass. 1, 20 A. R. 299. It is there said: "To give it (gift) the character of a public charity there must appear to be some benefit to be conferred upon, or duty to be performed towards, either the public at large or some part thereof, or an indefinite class of persons.'' The same rule is given in *Kent* v. *Dunham,* 142 Mass. 216, 7 N. E. 730, 56 A. R. 667; and in *Lear* v. *Manser,* 114 Me. 342, 96 Atl. 240. In determining whether a gift is a public charity the courts look, not at the motive of the donor in making it, but at the nature and purpose of it. *Fire Ins. Patrol* v. *Boyd,* 120 Pa. St. 624, 15 Atl. 553, 6 A. S. R. 745, 1 L. R. A. 417; *In re Graves,* 242 Ill. 33, 89 N. E. 672, 134 A. S. R. 302, 24 L. R. A. (N. S.) 283, 17 Ann. Cas. 137.

[6]    By the gift in Columbus Smith's Will, there is some benefit to be conferred upon an indefinite class of persons who are a part of the public, and therefore, it is a public charity within the definition given above. And that gifts for the purpose

of establishing or maintaining institutions like public Homes for the benefit of the aged, infirm, needy, homeless, friendless, or other persons in unfortunate circumstances, are recognized by the courts as charitable, appears not only in our own recent case of *St. Albans Hospital* v. *Enosburg,* 96 Vt. 389, 120 Atl. 97, but also from the following cases decided by the highest courts in other states: *In re Daly,* 208 Pa. 58, 57 Atl. 180; *Sherman* v. *Congregational Home Missionary Soc.,* 176 Mass. 349, 57 N. E. 702; *Amory* v. *Attorney General,* 179 Mass. 89, 60 N. E. 391; *Norris* v. *Loomis,* 215 Mass. 344, 102 N. E. 419; *Eliot's Appeal,* 74 Conn. 586, 51 Atl. 558; *Snug Harbor* v. *Carmody,* 211 N. Y. 286, 105 N. E. 543; *Kemmerer* v. *Kemmerer,* 233 Ill. 327, 84 N. E. 256, 122 A. S. R. 169.

[7, 8] But it is said that the specific injunction in the first codicil of Columbus Smith's will, "I want the taxes on all my property promptly paid," shows that he did not intend to create such a charitable trust as would by law be exempt from taxation; or that he did not know and comprehend that such a trust as he was creating was a charitable use exempt from taxation; or that he had in mind the statute relating to such exemption and, contemplating the possibility of his trustees asserting the claim of exemption, specifically provided against it by expressly declaring that he wanted all the taxes on his property promptly paid, thereby avoiding the possibility of creating such a charitable trust as would deprive the town of Salisbury of the substantial portion of its income from taxation. The complete answer to each and all of these positions is found in the meaning of the word "tax" or "taxes." In *Foster* v. *Stevens,* 63 Vt. 175, 22 Atl. 78, 13 L. R. A. 166, a case involving the question of exemption from taxation of shares of stock in a Canadian bank, owned in this State, it is said: "Taxes are defined as being the enforced proportional contribution of persons and property levied by the authority of the State for the support of government and for all public needs." And in *Morgan* v. *Cree,* 46 Vt. 773, 14 A. R. 640, a case involving the taxability of certain land in the town of Wheelock, granted in the town charter to Moor's Charity School and Dartmouth College, the Court said: "It is claimed on the part of the plaintiff that the word *tax, ex vi termini,* imports a public tax. It is true, a *tax,* in its ordinary acceptation, is a sum imposed or levied by government or other authority.

It is a general term applied to whatever is required by the government or local authority thereon to be paid by the people. It presupposes that the burden is imposed by some authority other than that of the individual taxed, else it would not be a tax, but a voluntary contribution.'' In the absence of anything showing a different intention on the part of the testator, the word ''taxes,'' is to be understood in such ordinary sense, and as having reference to burdens imposed by legislative authority in the exercise of the taxing power. As a part of the charitable trust he left real estate in several other states, as to which the taxing power of the state of the situs, only, can be legitimately exercised. *Union Refrigerator Transit Co.* v. *Kentucky*, 199 U. S. 194, 50 L. ed. 150, 26 Sup. Ct. 36, 4 Ann. Cas. 493. It is more likely that the testator had in mind the taxes assessed on such property than it is that he intended his property in this State, so devoted to a charitable use as to relieve the State of a burden which otherwise would devolve upon it, should pay taxes notwithstanding there is no law under which it can be taxed.

From the foregoing it is certain that the grant of Columbus Smith in trust for the purpose of founding a Home as specified in his will, is a grant for charitable uses, within the meaning of G. L. 684, subd. VI, and as such, by the provisions of that statute, is exempt from taxation.

It follows that the residuary estate given by the will of Harriet J. Smith in trust to be applied to the charitable uses and purposes of the Columbus Smith Home, is also a grant for charitable uses within the meaning of the same statute, and is not subject to taxation. How it stood in the latter respect on April 1, 1922, is yet to be considered.

[9] The record shows that the account of the executor, Thomas E. Boyce, in the estate of Harriet J. Smith, was approved and allowed by the probate court on July 13, 1921, and that on the 26th day of the same month, on application of the executor, a decree of distribution of the estate was made. At the same time, it appearing that Morris A. Thomas, one of the trustees named in the will, had deceased, Allen R. Sturtevant was appointed trustee as successor of said Thomas to serve jointly with Thomas E. Boyce, the surviving trustee named in the will. Thereupon, after decreeing in compliance with all and singular the specific bequests, the court decreed ''all the rest, residue and

remainder of said estate * * * to said Thomas E. Boyce and said Allen R. Sturtevant as trustees and to their successors in trust to be applied to the charitable uses and purposes of the Columbus Smith Home for Good Old Christian Women, created by the will of Columbus Smith, * * * under the direction of said trustees and their successors, acting in co-operation with the trustees and their successors appointed under the will of said late Columbus Smith; and in so far as this court has any authority in the premises, it likewise decrees to said Thomas E. Boyce and Allen R. Sturtevant as trustees and their successors any and all other estate of the deceased wherever situated, to be added to and likewise applied to the rest and residue of said estate hereinbefore listed and the same applied to the charitable uses and purposes of the said Columbus Smith Home. And said executor is ordered to pay over and deliver said estate, according to this decree.''

The same Thomas E. Boyce was named in the will both as executor and as one of the trustees of the trust estate, and has acted in both capacities.

It is contended by defendant that since the record does not show that Boyce as executor credited himself with having turned over the trust estate to himself and his associates as trustees, it shows that on April 1, 1922, he still had it in his hands as executor and not as trustee, and so it was then subject to taxation. The record contains a finding that the entire residue of the estate has been set aside for the charitable purposes of the Columbus Smith Home. While this finding does not state the time when the residue was so set aside, we think the time is shown by the further finding ''That the trustees of said estate entered upon their duties, as such, during the summer of 1921; that during said summer they inspected said premises with a view to making needed alterations therein; received and acted on applications for admission to said Home; accepted at least one applicant in the fall of 1921; and before April 1, 1922, they had closed a contract with the Hortonia Power Company for bringing electrical current to the Home, and engaged a matron and her husband who were to live on the premises.'' Thus construed, the foregoing findings show that the trust estate was transferred from Boyce as executor to himself as trustee, or to himself and Sturtevant as trustees, in the summer of 1921, in compliance with the order contained in the decree of distribution ''to pay over and

31

deliver said estate,'' as therein decreed, and thereafter the trust estate was in the hands of and held by the trustees in the execution of their trust. *Clark* v. *Powell,* 62 Vt. 442, 20 Atl. 597; *Hubbard* v. *Lloyd,* 6 Cush. (Mass.) 522, 53 A. D. 55. The judgment indicates that the court below understood its findings in this respect in the same way. The consequence is, that on the record the trust estate was exempt from taxation on April 1, 1922, as property granted for charitable uses. And the trust property being so transferred to the trustees, it matters not that on that day no part thereof had in fact been expended for the purposes of the trust.

The trustees were notified by the listers of the town of Salisbury to file an inventory of the trust estate held by them on April 1, 1922, but they did not so do. Thereupon the listers, acquiring knowledge of the estate from the probate court's decree of distribution, made an assessment upon the trust estate, notifying the trustees thereof, and also notifying them that the listers would meet on May 6, 1922, to hear them touching the action of the listers. On the day thus fixed the trustees appeared before the listers and offered to show, under oath, the facts concerning the trust estate and their objection to the assessment, but the listers refused to hear them. The trustees then filed with the listers their written objections to the assessment, the same being in part that all the property listed by the listers is bequeathed and devised to the trustees in trust (in short) for the uses and purposes of the Columbus Smith Home, and that all said property is and was on April 1, 1922, set aside, sequestered, or used for charitable purposes and is exempt from taxation under General Laws of the State, naming the section.

[10, 11] It is urged by defendant that the action of the listers in making the assessment was judicial and final, and that their judgment as to the amount of property, unappealed from, was conclusive. The principle here invoked has no application when, as in this instance, the property assessed was not taxable under the law, and consequently was outside the listers' jurisdiction. Their assessment of property not within their jurisdiction was without warrant of law, was void and may be impeached by the plaintiffs ''in any way and at any time, for it is no judgment in law.'' *Alexander & Hutchinson* v. *Montpelier,* 81 Vt. 549, 71 Atl. 720. The proceedings by way of appeal, provided for by

statute, relate to errors and mistakes of the listers in assessing taxable property, and not in assessing nontaxable property over which they have no jurisdiction. *Babcock* v. *Granville,* 44 Vt. 325; *National Metal Edge Box Co.* v. *Readsboro,* 94 Vt. 405, 111 Atl. 386.

[12]   Exception was saved to the admission in evidence of the decree of distribution in the estate of Columbus Smith, also in the estate of Harriet J. Smith.   But these exceptions are without force.   By G. L. 700, undivided real estate of a deceased person shall be assessed to such person's estate or to his executor or administrator, or to the possessor thereof, until notice is given to the listers of the sale or division of the same and the names of the persons to whom it is transferred; and by G. L. 703, subd. VI, personal estate of a deceased person in the hands of an executor or administrator and not distributed shall be set in the list to the estate, or to the executor or administrator.   Manifestly by the law of these sections the questions of whether the real estate had been divided, and whether the personal estate had been distributed, are of much consequence in the instant case in determining the taxability of the property granted to a charitable use, on April 1, 1922.   See *Clark* v. *Powell,* cited above.

[13]   The final administration accounts in the Columbus Smith estate and in the Harriet J. Smith estate were received in evidence for the purpose of establishing the date on which the trust began.   The exception was on the ground of immateriality. There was no error in the reception of this evidence.

Many of the other questions presented in defendant's brief are involved in and in effect determined by what we have already said.   Those not so involved and determined, if any, are immaterial and harmless.

*Judgment affirmed.*